UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS                    CIVIL COMPLAINT NO:
                                             1:22-CV-10905

RANDALL BOCK M.D.                   )
    Plaintiff,          )
v.                                  )        JURY DEMANDED
CANDACE LAPIDUS SLOANE              )
and GEORGE ABRAHAM, both solely in  )
their individual capacities,        )
    Defendants.         )

### PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE

Defendants' motion to dismiss recycled a failed seven-year old claim that the private trade association they controlled is an arm of the Commonwealth, and that their antitrust violations qualify for state action immunity.

On January 5, 2023, the Massachusetts Supreme Court published a full opinion that reiterated the standard and approach required to interpret a state statute, especially one that is unambiguous. *DiMasi v. Secretary of the Commonwealth*, SJC-13071, is attached.

In *DiMasi*, the question of pure law on appeal was whether "automatic" disqualification of an applicant for a lobbyist's license was available to the Secretary when the applicant had been convicted of ***federal*** felonies and not the specific ***state*** felonies enumerated in the statute. The Secretary of the Commonwealth argued that of course he could disqualify applicant DiMasi on the basis of federal felonies because he is the Secretary, a Constitutional officeholder. DiMasi declared that the plain text is the plain text and the matter was so open and shut it didn't require even oral argument.

The SJC ruled "We conclude that the language of the disqualification provision is

unambiguous, and that the Secretary's interpretation contravenes the plain statutory language and the Legislature's intent in enacting the provision."

The SJC arrived at this conclusion by considering *de novo* whether the statute in question is ambiguous. ""A fundamental tenant *(sic)* of statutory interpretation is that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result." Olmstead v. Department of Telecomm. & Cable, 466 Mass. 582, 588 (2013), quoting Sullivan v. Brookline, 435 Mass. 353, 360 (2001). Where the meaning of a statute is at issue, "[w]e begin with the canon of statutory construction that the primary source of insight into the intent of the Legislature is the language of the statute." Deutsche Bank Nat'l Trust Co. v. Fitchburg Capital, LLC, 471 Mass. 248, 253 (2015), quoting International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 853 (1983). "[I]f the language is clear and unambiguous, it is conclusive as to the intent of the Legislature," Deutsche Bank Nat'l Trust Co., supra, and we enforce the plain wording unless it would yield an absurd or unworkable result, Shirley Wayside Ltd. Partnership v. Board of Appeals of Shirley, 461 Mass. 469, 477 (2012)."

Applying the above mandatory principles, the SJC concluded that the statute is clear and unambiguous, and gave due reverence to the Legislature's use of the word "shall." "We have recognized the word "shall" as an imperative that indicates the Legislature's intent to prescribe a mandatory act. See Emma v. Massachusetts Parole Bd., 488 Mass. 449, 454 (2021), citing Hashimi v. Kalil, 388 Mass. 607, 609 (1983)." "We conclude that it unambiguously does not empower the Secretary with such discretionary interpretative authority.  The plain language of the statute identifies specific statutory violations and automatic consequences applicable for convictions under those provisions; it goes no further."

Here is that same legislative distinction in easier visual form:



State Felony   Federal Felony   State Felony

This court is mandatorily required to apply these same mandatory principles to interpret the Massachusetts Legislature's plain, clear, unambiguous, peremptory language that the Governor, via the Public Health Commissioner, "shall ***supervise*** the work of the board of registration in nursing, the board of registration in pharmacy, the board of registration of physician assistants, the board of registration of perfusionists, the board of registration of nursing home administrators, the board of registration in dentistry and the board of registration of respiratory therapists. The commissioner of public health shall ***consult*** with the chair of the board of registration in ***medicine*** concerning the operations of the board."

As the SJC ruled in *DiMasi*, "Given the absence of such words from the text, however, we cannot interpret the provision as if it contained them.  See Retirement Bd. of Somerville v. Buonomo, 467 Mass. 662, 672 (2014) ("We will not add words to a statute that the Legislature did not put there, either by inadvertent omission or by design")…. The Secretary's proffered interpretation…is unsupported by the plain meaning of the statutory language….Similar to our interpretation of G. L. c. 32, § 15 (3A), we conclude that the offenses enumerated in G. L. c. 3, § 45 (m), must be applied as a list, thus necessarily cabining the Secretary's discretion."

The Legislature took the effort to ensure that the board of registration in medicine is

**<u>NOT</u>** one of the enumerated boards listed in the same sentence that come under the "shall supervise" language. It is listed separately in conjunction with the term "shall consult." This legislatively mandated difference between the medical board and the rest of the enumerated boards is as obvious as a pimple on the nose.

Here is that same legislative distinction in an easier visual form:



NURSING   MEDICINE   DENTISTRY   PHARMACY

The SJC further ruled in *DiMasi* that the need for correct interpretation of a state statute in order to "cabin the powers" of the executive branch "undoubtedly is of public significance" so it considered the appeal even though the matter was moot with regards to DiMasi himself (and DiMasi's lawyer, Thomas Kiley, did not request the court to rule anyway) because the SJC found the matter was "capable of repetition, yet evading review."

This court is mandated to adhere to the SJC's standard for interpreting the plain text of Massachusetts law, especially a vital law that is the medical board's enabling statute, and thus is compelled to rule that the private trade association formerly controlled by Sloane and Abraham **<u>was never and is not</u>** under active supervision by the commissioner of public health or the Governor or the Commonwealth and is not an arm of the Commonwealth.

<u>CONCLUSION</u>

This court must take judicial notice of an on-point SJC ruling and the motion to dismiss

must be denied expeditiously.

Respectfully submitted, under the pains and penalties of perjury,

<u>/s/ Randall Bock M.D.</u>

January 8, 2023                   RANDALL BOCK M.D., *pro se*
                                  43 Brookdale Road, Newton MA 02460-1114
                                  phone 617-901-4847
                                  email rbockmd@Gmail.com

CERTIFICATE OF SERVICE

Dr. Bock certifies that he served a copy of this request upon defendants via counsel via

email.

<u>/s/ Randall Bock M.D.</u>

January 8, 2023                   RANDALL BOCK M.D.

NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13071

     SALVATORE F. DiMASI  vs.  SECRETARY OF THE COMMONWEALTH.


          Suffolk.    September 7, 2022. - January 5, 2023.

   Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, & Georges,
                              JJ.


Secretary of the Commonwealth.  Statute, Construction.  Moot
     Question.  Practice, Civil, Moot case.  Words, "Shall
     automatically disqualify."



     Civil action commenced in the Superior Court Department on
January 10, 2020.

     The case was heard by Robert B. Gordon, J., on motions for
judgment on the pleadings.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


     Julie E. Green, Assistant Attorney General, for the
defendant.
     Meredith G. Fierro for the plaintiff.
     Edmund D. LaChance, Jr., pro se, amicus curiae, submitted a
brief.


     GEORGES, J.  In 2011, Salvatore F. DiMasi, a former Speaker

of the Massachusetts House of Representatives, was convicted of

seven Federal felonies arising from his sale of political favors
while serving as Speaker.  After his release from prison in
March 2019, DiMasi attempted to register as a lobbyist with the
Secretary of the Commonwealth (Secretary).  Citing G. L. c. 3,
§ 45 (m), the Secretary denied DiMasi's application.  General
Laws c. 3, § 45 (m) (disqualification provision), provides that
the Secretary must disqualify an individual from registering as
a lobbyist for ten years if that individual has been convicted
of a felony under G. L. c. 3, 55, or 268A.  The Secretary
determined that even though DiMasi was convicted of Federal
offenses, the conduct underlying his convictions would have
violated G. L. c. 3 or 268A, and thus warranted rejection of his
application for registration as a lobbyist.  DiMasi challenged
the denial on the ground that the language of G. L. c. 3,
§ 45 (m), does not encompass Federal offenses.

Accordingly, we are asked to decide whether a statutory
provision which contains an "automatic" consequence of
disqualification for a felony conviction under G. L. c. 3, 55,
or 268A, allows the Secretary discretion to decide whether a
conviction of a nonenumerated offense nonetheless triggers the
same automatic consequence.  The Secretary maintains that the
disqualification provision grants him discretion to determine
whether an individual has been convicted of a felony in another
jurisdiction for conduct that would be proscribed under G. L.

c. 3, 55, or 268A.  If so, the Secretary maintains, the individual automatically must be disqualified from registering as a lobbyist, even if the person has not been convicted of a felony in the Commonwealth under one of the three enumerated chapters.  The Secretary contends that because the language of the disqualification provision is ambiguous, his interpretation is reasonable and should be afforded deference.

We conclude that the language of the disqualification provision is unambiguous, and that the Secretary's interpretation contravenes the plain statutory language and the Legislature's intent in enacting the provision.  General Laws c. 3, § 45 (m), does not afford the Secretary discretion to consider what other offenses might require automatic disqualification, even if the underlying conduct that resulted in a conviction could support a felony conviction pursuant to G. L. c. 3, 55, or 268A.  Rather, the disqualification provision limits automatic disqualification to individuals who have been convicted of a felony set forth in G. L. c. 3, 55, or 268A. Accordingly, we affirm the Superior Court judge's order granting DiMasi's motion for judgment on the pleadings.[1]

1.  Background.  DiMasi served as Speaker of the House from September 2004 through January 2009.  In June 2011, a jury

---

[1] We acknowledge the amicus brief filed in support of the plaintiff by Edmund D. LaChance, Jr.

convicted him of seven Federal felonies:  one count of
conspiracy, in violation of 18 U.S.C. § 371; two counts of
honest services mail fraud, in violation of 18 U.S.C. §§ 1341
and 1346; three counts of honest services wire fraud, in
violation of 18 U.S.C. §§ 1343 and 1346; and one count of
extortion under color of official right, in violation of 18
U.S.C. § 1951.  DiMasi was not convicted of any crimes under
Massachusetts law.  He was sentenced to eight years in prison
but ultimately only served five years before he was
compassionately released for medical reasons in November of
2016.[2]

In March 2019, DiMasi filed an application with the
Secretary to register as a lobbyist,[3] the first step in obtaining
a Massachusetts lobbying license.  See G. L. c. 3, § 41.  The
Secretary denied DiMasi's application on the ground that,
pursuant to G. L. c. 3, § 45 (m), DiMasi was automatically
disqualified from engaging in State lobbying for ten years from
the date of his Federal convictions.  The rejection letter
stated that DiMasi's Federal convictions "include convictions

---

[2] See United States v. DiMasi, 220 F. Supp. 3d 173, 201 (D.
Mass. 2016); 18 USC § 3582(c)(1)(A)(i).

[3] The lobbying law uses the terms "executive agent" and
"legislative agent" to refer to lobbyists.  See G. L. c. 3,
§ 39.  For simplicity, we use the term "lobbyist" throughout.

for conduct in violation of [G. L. c. 3 or 268A]."  DiMasi appealed from the rejection and requested a hearing.

At a prehearing conference in June 2019, the Secretary reaffirmed his position that, pursuant to G. L. c. 3, § 45 (m), DiMasi automatically was disqualified from acting as a lobbyist because of his Federal convictions.  The Secretary also raised an alternative theory for disqualification:  he argued that DiMasi should be disqualified under G. L. c. 3, § 45 (j),[4] because DiMasi had violated the State lobbying law while serving as Speaker.  Following the prehearing conference, the Secretary sent a subsequent notice pursuant to G. L. c. 3, § 45 (a), asserting that DiMasi had committed such State violations and requesting an adjudicatory proceeding on that alternative theory.

DiMasi filed a motion to strike the Secretary's theory of disqualification that relied on G. L. c. 3, § 45 (j).  DiMasi argued that the Secretary had not complied with the statutory prerequisites to initiate an adjudicatory hearing under G. L. c. 3, § 45 (a)-(k).  Based on these assertions, the Secretary moved to consolidate DiMasi's appeal of the automatic

---

[4] General Laws c. 3, § 45 (j), provides that "[u]pon a finding pursuant to an adjudicatory proceeding that there has been a violation [of G. L. c. 3, §§ 39-50], the [S]tate [S]ecretary may issue an order . . . suspending for a specified period or revoking the license and registration of the violator."

disqualification with his motion to strike the alternate theory of disqualification.

On November 26, 2019, a presiding officer of the Secretary's lobbyist division conducted an adjudicatory hearing on DiMasi's appeal and his motion to strike.  At the hearing, DiMasi argued that automatic disqualification under G. L. c. 3, § 45 (m), should be understood as disqualifying only persons who have been convicted of crimes enumerated in G. L. c. 3, 55, or 268A.

The presiding officer issued a decision upholding the Secretary's automatic disqualification of DiMasi, pursuant to G. L. c. 3, § 45 (m), and denying DiMasi's appeal.  He rejected DiMasi's argument that the statute should be construed narrowly and found that because DiMasi's convictions of Federal honest services crimes "closely align[ed]" with the language of G. L. c. 268A, the "conditions for [DiMasi's] automatic disqualification under [§ 45 (m)] ha[d] been satisfied."  The presiding officer allowed DiMasi's motion to strike the alternative theory of disqualification due to procedural deficiencies and granted the Secretary leave to refile.

DiMasi then filed a complaint against the Secretary in the Superior Court, seeking judicial review under G. L. c. 30A, § 14, and the certiorari statue, G. L. c. 249, § 4, of the decision upholding his automatic disqualification.  In addition,

DiMasi sought a declaratory judgment, pursuant to G. L. c. 231A, that the Secretary's alternate theory of disqualification was invalid and unenforceable.  Both parties filed motions for judgment on the pleadings.

A Superior Court judge granted DiMasi's motion for judgment on the pleadings.  The judge interpreted the disqualification provision as allowing only the automatic disqualification of persons who have been convicted of felonies for crimes specifically identified in G. L. c. 3, 55, or 268A.  Because DiMasi had not been convicted of a felony under those chapters, the judge held that DiMasi should not have been disqualified under G. L. c. 3, § 45 (m), from registering as a lobbyist.

The Secretary appealed to the Appeals Court the same month, and we transferred the case to this court on our own motion. After the transfer, the Secretary requested that the case be decided on the briefs, so that an expedited decision could be issued before the exclusionary period expired on June 15, 2021. We declined to do so, because such a decision would be of little benefit, as DiMasi's ten-year period of exclusion from lobbying would end that June, whether or not an expedited decision was issued before that point.

In light of the expiration of the ten-year exclusionary period, however, we ordered the parties, if they believed the appeal should not be dismissed as moot, to provide reasons why

the case should be heard.  In response, the Secretary argued that the court should exercise its discretion to decide the case because the issue is capable of repetition yet evading review. DiMasi took no position with respect to whether the court should dismiss the case as moot.

2.  Discussion.  a.  Mootness.  As a preliminary matter, we address the question of mootness.  An issue is moot where no actual controversy remains, or the party claiming to be aggrieved "ceases to have a personal stake in its outcome" (citation omitted).  Seney v. Morhy, 467 Mass. 58, 61 (2014). Here, the question whether DiMasi properly was precluded from registering as a lobbyist in 2019 undisputedly is moot.  His ten-year period of exclusion expired on June 15, 2021, and he has been able to register and practice as a lobbyist in the Commonwealth for more than one year.  Nonetheless, even where an issue is moot, appellate review may be appropriate where the issue is one of public importance and was fully argued on both sides; where the question is certain, or at least very likely, to arise again in similar factual circumstances; and where appellate review could not be obtained before the recurring question again would be moot.  Lockhart v. Attorney Gen., 390 Mass. 780, 783 (1984).

We agree with the Secretary that such is the case here. The issue raised is "capable of repetition, yet evading review"

(citation omitted).  First Nat'l Bank of Boston v. Haufler, 377 Mass. 209, 211 (1979).  "An issue apt to evade review is one which tends to arise only in circumstances that create a substantial likelihood of mootness prior to completion of the appellate process."  Id.  The Secretary will be required to continue to interpret the disqualification provision, as it applies to future cases of felons who attempt to register as lobbyists.  Issues raised by such applications appear likely to evade appellate review at least in some circumstances.  For example, an individual with Federal felony convictions may attempt to register as a lobbyist with only a few months or years remaining before the end of the ten-year period of disqualification.  As this case demonstrates, that well may be an insufficient period for the applicant to appeal from the denial of an application for registration as a lobbyist through the Secretary's administrative process and then, perhaps, through the judicial appellate process.

The question at issue here also undoubtedly is of public significance.  Clarification of the scope of the Secretary's discretion under the disqualification provision, which the Legislature intended to serve as a gatekeeping function for lobbyists, will aid the Secretary in preserving the integrity of the lobbying industry and in investigating campaign- and

election-related malfeasance.  Given these considerations, we
exercise our discretion to decide the case.

    b.  <u>Whether G. L. c. 3, § 45 (m), is ambiguous</u>.  Questions
of statutory interpretation, such as the extent of the
Secretary's discretion under G. L. c. 3, § 45 (m), to disqualify
individuals from registering as lobbyists for reasons other than
a conviction of one of the enumerated offenses, are questions of
law and thus are reviewed de novo.  See <u>Bridgewater State Univ.
Found</u>. v. <u>Assessors of Bridgewater</u>, 463 Mass. 154, 156 (2012).
"We give substantial deference to a reasonable interpretation of
a statute by the administrative agency charged with its . . .
enforcement" (citation omitted).  <u>Water Dep't of Fairhaven</u> v.
<u>Department of Envtl. Protection</u>, 455 Mass. 740, 744 (2010).  "An
incorrect interpretation of a statute by an administrative
agency[, however,] is not entitled to deference."  <u>Id</u>., quoting
<u>Kszepka's Case</u>, 408 Mass. 843, 847 (1990).

    "A fundamental tenant of statutory interpretation is that
statutory language should be given effect consistent with its
plain meaning and in light of the aim of the Legislature unless
to do so would achieve an illogical result."  <u>Olmstead</u> v.
<u>Department of Telecomm. & Cable</u>, 466 Mass. 582, 588 (2013),
quoting <u>Sullivan</u> v. <u>Brookline</u>, 435 Mass. 353, 360 (2001).  Where
the meaning of a statute is at issue, "[w]e begin with the canon
of statutory construction that the primary source of insight

into the intent of the Legislature is the language of the statute." Deutsche Bank Nat'l Trust Co. v. Fitchburg Capital, LLC, 471 Mass. 248, 253 (2015), quoting International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 853 (1983). "[I]f the language is clear and unambiguous, it is conclusive as to the intent of the Legislature," Deutsche Bank Nat'l Trust Co., supra, and we enforce the plain wording unless it would yield an absurd or unworkable result, Shirley Wayside Ltd. Partnership v. Board of Appeals of Shirley, 461 Mass. 469, 477 (2012).

i. Plain language. General Laws c. 3, § 45 (m), provides that "[t]he [S]tate [S]ecretary shall automatically disqualify any person convicted of a felony in violation of [G. L. c. 3, 55, or 268A,] from acting or registering as an executive or legislative agent for a period of [ten] years from the date of conviction." Accordingly, the plain meaning of the words "shall" and "automatically" are critical to our interpretation. We have recognized the word "shall" as an imperative that indicates the Legislature's intent to prescribe a mandatory act. See Emma v. Massachusetts Parole Bd., 488 Mass. 449, 454 (2021), citing Hashimi v. Kalil, 388 Mass. 607, 609 (1983). In common usage, the word "automatic" has been defined as "having a self-acting or self-regulating mechanism that performs a required act at a predetermined point in an operation." Webster's Third New International Dictionary 148 (2002). Thus, the language of

G. L. c. 3, § 45 (m), is clear and unambiguous; it mandates that the Secretary "shall automatically disqualify" from registering as a lobbyist any individual who has been convicted of a felony enumerated in G. L. c. 3, 55, or 268A.

At issue is whether the disqualification provision also grants the Secretary authority to disqualify individuals with convictions that are the result of conduct that would be proscribed by G. L. c. 3, 55, or 268A.  We conclude that it unambiguously does not empower the Secretary with such discretionary interpretative authority.  The plain language of the statute identifies specific statutory violations and automatic consequences applicable for convictions under those provisions; it goes no further.  The requirement of G. L. c. 3, § 45 (m), is triggered by a "felony" "convict[ion]" that is "in violation of" G. L. c. 3, 55, or 268A.  The statutory text does not reference "conduct"; it does not use the words "including," "containing," or "similar to"; and it does not reference the laws of other jurisdictions.  The inclusion of any such language undoubtedly would give weight to the Secretary's interpretation.  Given the absence of such words from the text, however, we cannot interpret the provision as if it contained them.  See Retirement Bd. of Somerville v. Buonomo, 467 Mass. 662, 672 (2014) ("We will not add words to a statute that the Legislature

did not put there, either by inadvertent omission or by design").

The Secretary contends that the language of the disqualification provision is inherently ambiguous, and therefore, the court should defer to the Secretary's interpretation.  In particular, the Secretary maintains that the phrase "shall automatically disqualify" is susceptible to two distinct interpretations.  The first, narrower interpretation is that the Secretary may not use conscious thought or intent when disqualifying applicants from registering as lobbyists.  The second, broader interpretation, which the Secretary favors, is more nuanced.  Under this interpretation, the Secretary may disqualify an applicant for conduct that falls within the scope of conduct proscribed by G. L. c. 3, § 45 (m).  Consistent with this broader interpretation, the Secretary would have discretion to examine whether an applicant's conduct would warrant a felony conviction under G. L. c. 3, 55, or 268A, even if the applicant had not been convicted of an offense under any of those three chapters.  The Secretary maintains that the first, narrower interpretation is erroneous because he necessarily must act with some level of thought or intent in his role as executive agent.

Contrary to the Secretary's argument, we do not view the use of the word "automatic" in the disqualification provision as a source of ambiguity.  Although the Secretary must use

conscious thought to determine whether an individual falls within the statutory purview, the word "automatic" indicates that, once such a determination has been made, the Secretary must disqualify any person who has a prior conviction falling within the specific statutory confines; the Secretary lacks the discretion to do otherwise.  See Rushworth v. Registrar of Motor Vehicles, 413 Mass. 265, 273 (1992).  The Secretary's proffered interpretation, that the "conscious application of law to facts" requires an inquiry beyond the ministerial determination whether there has been a conviction under G. L. c. 3, 55, or 268A, is unsupported by the plain meaning of the statutory language.

The remainder of the statutory text of G. L. c. 3, § 45 (m), specifically the language "any person convicted of a felony in violation of [G. L. c. 3, 55, or 268A]," which follows the phrase "shall automatically disqualify," ends any question of ambiguity.  As the Secretary asserts, the word "automatically," which eliminates any discretion, "says nothing about whether the felony convictions covered by G. L. c. 3, § 45 (m), must have been entered in [S]tate or [F]ederal court."  The remainder of the disqualification provision, however, does.

Reading the phrases "shall automatically disqualify" and "any person convicted of a felony in violation of [G. L. c. 3, 55, or 268A]," as one, the lack of discretion afforded to the Secretary under the disqualification provision is evident.  We

agree with the motion judge that "[t]he Secretary's only task under G. L. c. 3, § 45 (m), is to look at a person's criminal record and determine whether he or she has been convicted [of a felony] under G. L. c. 3, 55, or 268A[,] in the past ten years. If yes, then disqualification from lobbying shall automatically follow."  We must presume that the Legislature intended what the words of the statute say, and where the language is clear, it is "conclusive as to legislative intent" (citation omitted). Conservation Comm'n of Norton v. Pesa, 488 Mass. 325, 331 (2021).  See Collatos v. Boston Retirement Bd., 396 Mass. 684, 687 (1986).

To support his interpretation that the "automatic[]" consequence mandated by the disqualification provision requires deliberation by a State actor, the Secretary analogizes G. L. c. 3, § 45 (m), to the pension forfeiture statute and the firearms licensing statute.  Such comparisons are inapposite.

This court's previous interpretations of the pension forfeiture statute underscore why the Secretary's comparisons to G. L. c. 3, § 45 (m), are inapt.  The Secretary points to G. L c. 32, § 15 (4), which mandates that "after final conviction of a criminal offense involving violation of the laws applicable to his office or position," a member of the State retirement board system automatically is disqualified from receiving a retirement allowance.  See Mahan v. Boston Retirement Bd., 490 Mass. 604,

609-610 (2022).  Under the terms of G. L c. 32, § 15 (4), the
State retirement board is required to determine which laws
constitute "the laws applicable to [an individual's] office or
position" when applying the terms of the provision.  See State
Bd. of Retirement v. Finneran, 476 Mass. 714, 719 (2017).  This
determination requires a fact-specific inquiry to decide whether
there is a "direct link between the criminal offense and the
member's office or position" (citation omitted).  Id. at 722.
The enforcing executive agent is granted discretion by virtue of
the intentionally indeterminate construction of the provision, a
situation that does not exist in G. L. c. 3, § 45 (m).

The permissiveness of G. L. c. 32, § 15 (4), stands in
contrast with the specificity of a related provision, G. L.
c. 32, § 15 (3A); language of this provision might be a more
appropriate guide for the proper interpretation of G. L. c. 3,
§ 45 (m).  General Laws c. 32, § 15 (3A), mandates the
forfeiture of pension benefits where an individual has been
"convict[ed] of an offense set forth in [G. L. c. 268A, § 2,] or
[G. L. c. 265, § 25]."  We considered the proper construction of
this provision in Collatos, 396 Mass. at 687.  There, we
reasoned that in enacting G. L. c. 32, § 15 (3A), "[t]he
Legislature ha[d] chosen two crimes that are to be enforced by
[automatic disqualification], and it has precisely denoted
them."  Collatos, supra.  So too here.  The Legislature has set

forth the specific convictions that must trigger automatic disqualification under G. L. c. 3, § 45 (m); those convictions are the felonies enumerated in G. L. cc. 3, 55, and 268A. Similar to our interpretation of G. L. c. 32, § 15 (3A), we conclude that the offenses enumerated in G. L. c. 3, § 45 (m), must be applied as a list, thus necessarily cabining the Secretary's discretion.

The Secretary's reliance on the firearms licensing statute likewise suffers from the same flaw as his comparison to the pension forfeiture provisions.  General Laws c. 140, § 131 (d) (i) (C), requires automatic disqualification from obtaining a firearms license for conviction of a "violent crime," which, in turn, is defined as a crime "involv[ing] conduct that presents a serious risk of physical injury to another."  G. L. c. 140, § 121.  Like the broad definition of "laws applicable to [an individual's] office or position" in the pension forfeiture statute, the similarly broad definition applicable to G. L. c. 140, § 131 (d) (i) (C) -- "conduct that presents a serious risk of physical injury" -- requires interpretation by an executive agent.  The general language in the definition of "violent crime" that triggers disqualification, however, contrasts with other provisions of that statute that enumerate specific crimes that also trigger disqualification.  See, e.g., G. L. c. 140, § 131 (d) (i) (B)

("misdemeanor[s] punishable by imprisonment for more than [two] years"); G. L. c. 140, § 131 (d) (i) (F) ("misdemeanor crime[s] of domestic violence as defined in 18 U.S.C. [§] 921[a][33]"). General Laws c. 3, § 45 (m), contains a similarly definite list of enumerated offenses as these latter two provisions of the firearms licensing statute.

ii.   <u>Legislative history</u>.   The legislative history of the automatic disqualification provision supports its clear and unambiguous terms.   See <u>Sullivan</u>, 435 Mass. at 360; <u>Commonwealth</u> v. <u>Welosky</u>, 276 Mass. 398, 401 (1931), cert. denied, 284 U.S. 684 (1932) ("Statutes are to be interpreted . . . in connection with their development . . .").

We agree with the Secretary that a primary purpose of the disqualification provision's enabling statute, An Act to improve the laws relating to campaign finance, ethics, and lobbying, St. 2009, c. 28 (2009 lobbying law), was to reduce the risk of corruption in the lobbying profession.   Prior to 2009, the Secretary had authority only to disqualify a person from registering as a lobbyist for cause.   See St. 1973, c. 981, § 8. In 2008, then-Governor Deval Patrick directed a task force to recommend changes to the Commonwealth's then-existing statutes on public corruption.   See Executive Order No. 506 (Nov. 7, 2008).   In its report and recommendations to the Governor, submitted January 6, 2009 (task force report), the task force

recommended legislation that granted the Secretary new authority
to suspend or permanently revoke a lobbyist's license.  See task
force report at 41; task force report, App. C, § 14.  The task
force's recommendations would have authorized the Secretary, if
the Secretary felt there was sufficient evidence, to initiate a
preliminary inquiry into violations of G. L. c. 3, §§ 39 to 50,
and, if the inquiry provided reasonable cause, to initiate an
adjudicatory proceeding to determine a remedy.  See task force
report, App. C, § 14.  The remedies afforded to the Secretary
would have included suspending or rejecting a lobbying license
or registration, issuing orders requiring the violator to cease
and desist from engaging in the violation, requiring the
violator to remedy the violation, or requiring the violator to
pay a civil penalty.  See id.  Those provisions were codified
almost verbatim[5] as G. L. c. 3, § 45 (a)-(k).  Compare St. 2009,
c. 28, § 12, with task force report, App. C, § 14.

As a result, the Secretary currently holds broad civil
enforcement authority over the lobbying industry pursuant to

_____

[5] The language of G. L. c. 3, § 45 (a)-(k), that ultimately
was adopted, however, does contain a few substantive differences
from the language of the proposed legislation.  These
differences include removing the provisions expressly
authorizing the Secretary to share records from a confidential
inquiry under G. L. c. 3, § 45 (a), with certain other
enforcement agencies, and removing a witness's right to be
represented by counsel in adjudicatory proceedings under G. L.
c. 3, § 45 (f).

G. L. c. 3, § 45 (a)-(k); the Secretary need not rely only upon
the disqualification provision to prevent individuals who have
engaged in corrupt conduct, or who have been convicted of a
felony in another jurisdiction, from registering as lobbyists.
For example, if a person who attempts to register as a lobbyist
recently was charged or convicted under a Federal statute for
conduct that also is prohibited by G. L. c. 3, §§ 39 to 50, the
Secretary can initiate proceedings and suspend or revoke the
individual's lobbyist license and registration, see G. L. c. 3,
§ 45 (a)-(j).  Indeed, as discussed, the Secretary attempted to
invoke this provision against DiMasi as an alternative theory of
disqualification.

The original recommendations by the task force did not
include language concerning automatic disqualification for
criminal convictions.  While the House was considering the 2009
lobbying law, and after receiving a public comment to the same
effect, a member of the House proposed legislation that
automatically would have disqualified all felons from
registering as lobbyists, regardless of the jurisdiction of
their felony convictions.  See 2009 House Doc. No. 3500, § 3.
This bill was not taken up by the House.  Later, during floor
debates, the same language was reintroduced as an amendment to
the draft 2009 lobbying law, and immediately was tabled.
Subsequently, a "redrafted" version of the amendment was

introduced that limited automatic disqualifications to felony convictions under G. L. c. 3, 55, or 268A.  See 2009 House J. 122.  This constrained version of the original provision was adopted and enacted as G. L. c. 3, § 45 (m).  St. 2009, c. 28, § 12.

The "statutory expression of one thing is an implied exclusion of other things omitted from the statute." Collatos, 396 Mass. at 687.  Because the Legislature repeatedly rejected language that would have disqualified all felons, and instead included language that limited automatic disqualification to felony convictions under G. L. c. 3, 55, or 268A, the Legislature evidently did not intend the Secretary to have the broad "automatic" disqualification discretion that the Secretary suggests.  See Conservation Comm'n of Norton, 488 Mass. at 335. To the contrary, if the Legislature's intent was to disqualify individuals based on their underlying conduct, regardless of the conviction, "the wording of the statute could have easily reflected it.  It does not." Casseus v. Eastern Bus Co., 478 Mass. 786, 796 (2018), quoting Rowley v. Massachusetts Elec. Co., 438 Mass. 798, 802 (2003).

iii.  Felonies in G. L. c. 55.  The Secretary's argument that the disqualification provision is inherently ambiguous also rests on the reference to convictions of felonies under G. L. c. 55.  The Secretary posits that because G. L. c. 55 "defines

no felony offenses," limiting the triggering offenses in the disqualification provision only to State felonies would render a significant portion of the provision superfluous.  "[A] felony in violation of chapter 3, chapter 55, or chapter 268A," the Secretary contends, instead must mean "conduct proscribed by" those chapters; otherwise, the provision containing the word "felony" would be meaningless.

The Secretary argues that the motion judge's reasoning to the contrary indicated that competing canons of statutory construction were applicable and, thus, that the provision is inherently ambiguous.  We need not decide between any competing canons of statutory interpretation, however, because G. L. c. 55 indeed does contain reference to a felony.[6]

At first blush, the language of G. L. c. 55 mentions no felonies.  General Laws c. 55 contains multiple sections that include both a requirement of campaign finance administration and a corresponding penalty for violating that requirement.

---

[6] A felony is "[a] crime punishable by death or imprisonment in the [S]tate prison."  G. L. c. 274, § 1.  "All other crimes are misdemeanors."  Id.  Because a sentence to a house of correction may not exceed two and one-half years, statutes that prescribe terms of imprisonment longer than that period are crimes necessarily punishable by confinement in State prison, and thus are felonies.  See Commonwealth v. Zawatsky, 41 Mass. App. Ct. 392, 395-396 (1996); G. L. c. 279, §§ 19, 23.

These penalties are all misdemeanors.[7]  Thus, considering only
the language of G. L. c. 55, all penalties explicitly set forth
within the chapter are misdemeanors.  At least one section of
G. L. c. 55, however, defines prohibited conduct in which the
penalty for a conviction is set forth in a different chapter of
the General Laws.  Specifically, G. L. c. 55, § 32,[8] which
defines corrupt practices by candidates, denotes several
practices that are prohibited to all candidates for public
office.  The penalties for these prohibited practices are
described throughout G. L. c. 56 and include at least one

---

[7] See, e.g., G. L. c. 55, §§ 2, 3, 5, 6, 7, 8, 9, 10, 11,
12, 13, 14, 15, 16, 16A, 16B, 17, 18, 18B, 18G, 22, 22A, 23.

[8] General Laws c. 55, § 32, provides:

"A candidate shall be deemed to have committed a corrupt
practice who commits any of the following offences:

"Making or permitting any person or non-elected political
committee authorized by him to make a false return in any
statement filed under [G. L. c. 55, §§ 18, 19, and 24,] by
him or on his behalf.

"Making a false return in any statement filed under [G. L.
c. 55, §§ 18 and 24,] by a candidate for nomination or
election.

"Any candidate fraudulently and wilfully obstructing and
delaying a voter, interfering with, hindering or preventing
an election officer from performing his duties, forging an
endorsement upon, altering, destroying or defacing a
ballot, tampering with or injuring or attempting to injure
any voting machine or ballot box to be used or being used
in a primary or election, or preventing or attempting to
prevent the correct operation of such machine or box."

potential felony sentence for tampering with a voting machine. See G. L. c. 56, § 51.[9]  General Laws c. 55 thus does prohibit conduct that could lead to a felony conviction.[10]  Consequently, the Secretary's claim of ambiguity created by the reference to purportedly nonexistent felonies in G. L. c. 55 is unavailing.[11]

<u>Judgment affirmed</u>.

---

[9] General Laws c. 56, § 51, provides:

"Any person who shall tamper with or injure or attempt to tamper with or to injure any voting machine to be used or being used in an election, or who shall prevent or attempt to prevent the correct operation of such machine, or any unauthorized person who shall make or have in his possession a key to a voting machine to be used or being used in an election, shall be punished by a fine of not less than one hundred [dollars] nor more than [$500], or by imprisonment for not less than one nor more than two and one half years or <u>in the [S]tate prison for not less than two and one half nor more than five years</u>, or both." (emphasis added).

[10] Felony punishment for tampering with voting machines has existed in Massachusetts for more than a century.  See St. 1913, c. 835, § 474 (stating that tampering with ballots is to be "guilty of a felony" and listing imprisonment in State prison as potential penalty).

[11] Because we resolve the matter in favor of DiMasi on the basis of the statute's plain meaning, we need not reach DiMasi's constitutional arguments.