United States District Court
District of Massachusetts

```
_____
                               )
Randall Bock,                  )
                               )
          Plaintiff,           )
                               )
          v.                   )     Civil Action No.
                               )     22-10905-NMG
Candace Lapidus Sloane, et al.,)
                               )
          Defendants.          )
_____    )
```

**MEMORANDUM AND ORDER**

GORTON, J.

Plaintiff Randall Bock ("Bock" or "plaintiff"), acting <u>pro se</u>, brings a one-count complaint against Candace Lapidus Sloane ("Sloane") and George Abraham ("Abraham") (collectively, "defendants"), in their individual capacities, for alleged violations of Section 1 of the Sherman Act. Bock claims that defendants took unlawful actions against him while they were serving as members of the Massachusetts Board of Registration in Medicine ("the Board"). Pending before the Court is defendants' motion to dismiss for failure to state a claim. For the reasons that follow, the motion will be allowed.

I.  **Background**

   A.  **Factual Background**

Bock is a physician residing in Massachusetts who treats opioid use disorders and has been licensed in Massachusetts

since 1984 except during certain periods of suspension. Defendants Sloane and Abraham are both residents of Massachusetts. Sloane was a member and Chair of the Board from 2011 to 2020. Abraham was a Board member from some time before 2014 until 2021 and served at various times as Vice Chair and Chair of the Board. Bock seeks damages against Sloane and Abraham in their individual capacities.

The allegations in the complaint refer to a litany of events, policies and proceedings beginning in about 2006 and continuing until 2021. Bock's factual allegations are interspersed with myriad legal arguments and with his speculation about the motivations of defendants. He has enclosed with his complaint a transcript of a September 26, 2019, Board meeting.

Defendants have submitted more than a dozen exhibits of public administrative actions and judicial proceedings which provide additional information about: 1) the first disciplinary proceeding against Bock, beginning in early 2014; 2) his appeals therefrom, ending, in pertinent part, in late 2018; 3) litigation with respect to the reinstatement of his medical license, throughout 2019; 4) the second disciplinary proceeding as to plaintiff's medical license, beginning in 2019; and 5) his appeals therefrom, ending in late 2021.

Reduced to its underlying theory of unlawful conduct, the complaint alleges that Sloane and Abraham violated Section 1 of the Sherman Act by causing the Board to take unwarranted, adverse action against Bock's medical license to the detriment of market competition.  Specifically, in 2014, the Board issued a Statement of Allegations against Bock and, contemporaneously, temporarily suspended his medical license.  The suspension was referred to the Division of Administrative Law Appeals ("DALA"), an independent agency in Massachusetts which provides due process hearings with respect to state agency actions and then makes a "recommended decision" to the pertinent agency.

After convening a hearing on the summary suspension, DALA recommended that the suspension be upheld and the Board accepted and adopted that recommendation.  Bock appealed to a single justice of the Massachusetts Supreme Judicial Court ("SJC") who remanded the matter to DALA because it had applied an incorrect evidentiary standard.  DALA convened another hearing on the merits of the suspension in 2018 and issued a recommended decision to the Board that Bock had violated certain statutes and regulations but that he had not provided substandard care to his patients.

The Board accepted and adopted DALA's second recommended decision and issued its final decision in November, 2018, but did not reinstate Bock's license at that time because it had

lapsed during the period of summary suspension.  Bock filed a
petition for certiorari with a single justice of the SJC who
reported the case to the full SJC.  Before that Court decided
the case, the Board reinstated Bock's license in September,
2019.

In the meantime, the Board issued a second Statement of
Allegations in July, 2019, with respect to a recently-disclosed
settlement of a malpractice lawsuit against Bock.  Thus,
although the Board reinstated plaintiff's license in September,
2019, it suspended his license for a second time the following
month.  Bock appealed that suspension and, in 2020, DALA
recommended that his suspension be vacated.  The Board accepted
and adopted that recommendation.  In June, 2021, DALA
recommended dismissal of the second Statement of Allegations
which the Board did in October, 2021.

Bock alleges that Sloan and Abraham promoted and
manipulated the Board proceedings regarding his license because
of their opposition to his treatment model for opioid use
disorder.  He avers that he has, for many years, followed a
treatment model in which patients with opioid use disorders are
tapered off Suboxone rather than forced to purchase it monthly
"for the rest of their natural lives."  Bock concludes that
Sloan, Abraham and the Board persecuted him for this treatment

model and sought to "eliminate [his] business", thereby harming competition and affecting interstate commerce.

### B. Procedural History

Plaintiff filed suit pro se in the District of Massachusetts in June, 2022, and shortly thereafter filed motions to reassign this action and to disqualify opposing counsel.  This Court denied those motions in July, 2022. Defendants filed the pending motion to dismiss for failure to state a claim in August, 2022, which plaintiff timely opposed. In the interim, Bock filed a second motion to disqualify opposing counsel which this Court denied.

## II.  Motion to Dismiss

### A. Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering that determination, a court may consider certain categories of documents extrinsic to the complaint "without converting a motion to dismiss into a motion for summary judgment." Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  For instance, a court may consider documents of undisputed authenticity, official public records, documents central to a plaintiff's claim and documents that were sufficiently referred to in the complaint. Watterson, 987 F.2d at 3.

A court may not disregard properly pled factual allegations in the complaint even if actual proof of those facts is improbable. Ocasio-Hernandez, 640 F.3d at 12.  Rather, the court's inquiry must focus on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13.

**B. Application**

Defendants move to dismiss the complaint on the following grounds: 1) Sloane and Abraham are entitled to absolute quasi-judicial immunity, 2) Bock has failed to state a plausible claim for an antitrust violation and 3) his claim is barred by qualified immunity and/or state-action immunity.

### 1. Quasi-Judicial Immunity

Sloane and Abraham contend that they are entitled to absolute immunity with respect to actions they took as Board members in their quasi-judicial capacity.  In Bettencourt v. Bd. of Registration in Medicine of Com. of Mass. [hereinafter "Bettencourt"], the First Circuit Court of Appeals ("the First Circuit") held that Board members are entitled to absolute immunity when acting in a quasi-judicial capacity. See 904 F.2d 772, 782-84 (1st Cir. 1990).  An official acts in a quasi-judicial capacity if he or she

> perform[s] *functions* essentially similar to those of judges or prosecutors, in a setting similar to that of a court.

Id. at 782.

The First Circuit specifically addressed the adjudicatory function of a Board member in the context of "revoking a physician's license" and held that quasi-judicial immunity is appropriate in such circumstances. Id. at 783-84.  Although plaintiff suggests that Bettencourt is a "zombie" precedent and refers to N. Carolina State Bd. of Dental Examiners v. F.T.C., 574 U.S. 494 (2015) [hereinafter "N. Carolina Dental"], in support of such assertion, that decision is not relevant to the issue of whether defendants are entitled to quasi-judicial immunity.

N. Carolina Dental concerned the purported state-action immunity of a state dental board and did not involve a claim for money damages against individual board members.  The Supreme Court explained that the case

> [did] not offer occasion to address the question
> whether agency officials, including board members,
> may, under some circumstances, enjoy immunity from
> damages liability.

Id. at 513.  The First Circuit has expressly held that N. Carolina Dental does not disturb the absolute quasi-judicial immunity afforded to Board members under Bettencourt. See Padmanabhan v. Hulka, 2019 WL 10378226, at *1 (1st Cir. July 10, 2019).

There is no reason to doubt the continuing vitality of the quasi-judicial immunity for Board members recognized in Bettencourt and the question in the case at bar is, therefore, whether the allegations against Sloane and Abraham are directed at their performance of an adjudicative or prosecutorial function.  Bock asserts that, as Board members, Sloane and Abraham: 1) summarily suspended his license in 2014 and eliminated him from the "medical marketplace", 2) mishandled patient complaints, 3) issued unfounded Statements of Allegations, 4) allowed investigations and prosecutions to be mishandled, 5) wrongfully kept the suspension of his license in

place from 2014 through 2019 and 6) unfairly suspended his
license again in 2019.

An individual Board member acts in a manner similar to a
judge when he or she

> weighs evidence, makes factual and legal
> determinations, chooses sanctions, [or] writes
> opinions explaining [his or her] decisions. . . .

Bettencourt, 904 F.2d at 783; see also Ramsaran v. Sloane, 159
N.E.3d 1088, 2020 WL 7821410 (2020) (explaining in an
unpublished opinion that the defendant Board member was entitled
to immunity when determining whether to bring a charge, rely on
certain evidence or issue a Statement of Allegations).

Furthermore, the First Circuit has held that members of
similar boards are immune from liability for their performance
of a quasi-judicial or prosecutorial function in circumstances
where they "instigat[e] and prosecut[e]" charges, Wang v. N.H.
Bd. of Registration in Med., 55 F.3d 698, 701 (1st Cir. 1995),
or suspend a license even if the suspension involved a "grave
and unacceptable procedural error", Guzman-Rivera v. Lucena-
Zabala, 642 F.3d 92, 99 (1st Cir. 2011).

The Court concludes that Bock's allegations are squarely
directed at the performance by Sloane and Abraham of quasi-
judicial functions to which immunity applies.  The conduct in
question is: 1) comparable to that of a judge and, in some
respects, a prosecutor, 2) likely to "stimulate a litigious

- 9 -

reaction" and 3) occurred in the context of proceedings with adequate procedural safeguards. Bettencourt, 904 F.2d at 783 (listing those three factors as guides for analyzing "how closely analogous the adjudicatory experience of a Board member is to that of a judge"); Wang, 55 F.3d at 701 (explaining that the distinction between a quasi-judicial and a prosecutorial function does not affect the applicability of absolute immunity).  Although Bock emphasizes that his claims are brought against Sloane and Abraham in their "individual capacities", that distinction does not negate their entitlement to quasi-judicial immunity in this case. See id. (citing Bettencourt, 904 F.2d at 782-85).

Finally, the complaint is littered with speculative pronouncements about purported improper motivations of Sloane and Abraham.  Even if it were appropriate to accept such speculation as factual allegations, the motives of officials entitled to absolute immunity do not affect the application of the immunity. See Cleavinger v. Saxner, 474 U.S. 193, 199-201 (1985) (explaining that absolute immunity is not "affected by the motives with which [one's] judicial acts are performed") (quoting Bradley v. Fisher, 80 U.S. 335, 347 (1871)); Bettencourt, 904 F.2d at 785 n.16 (finding that Board members were entitled to absolute immunity even though plaintiff claimed

they had participated in "an ongoing conspiracy to deprive physicians of their rights").

In light of the foregoing, the Court concludes that Sloane and Abraham are entitled to absolute quasi-judicial immunity in this matter.

### 2.  Section 1 of the Sherman Act

Furthermore, Bock has failed to allege facts sufficient to state a claim under the Sherman Act.  In order to state a claim that Section 1 of the Sherman Act has been violated, a plaintiff must plausibly allege:

> (1) the existence of a contract, combination or conspiracy;
>
> (2) that the agreement unreasonably restrained trade . . . and
>
> (3) that the restraint affected interstate commerce.

Dahl v. Bain Capital Partners, LLC, 937 F. Supp. 2d 119, 134 (D. Mass. Mar. 13, 2013) (citation omitted).

A claim under Section 1 of the Sherman Act cannot survive a motion to dismiss if the conduct alleged "stems from independent decision [rather than] from an agreement, tacit or express." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 553 (2007) (cleaned up).  A complaint that alleges mere "parallel conduct" or states only "a conclusory allegation of agreement at some unidentified point" is insufficient. Id. at 557.  The Twombly standard does not, however, permit this Court to dismiss a Section 1 claim on

grounds that a plausible theory of permissible conduct appears more probable than a plausible theory of liability. See Evergreen Partnering Grp., Inc. v. Pactiv Corp., 720 F.3d 33, 46 (1st Cir. 2013) (emphasizing the difference between a court's analysis at the motion to dismiss stage and its analysis at "later litigation stages").  Instead, the Court must assess whether the complaint alleges

> the general contours of when an agreement was made, supporting those allegations with a context that tends to make said agreement plausible.

Id. at 46.

Bock labels the conduct of Sloan and Abraham as unlawful collusion in conclusory fashion but does not proffer the general contours of a plausible agreement or conspiracy.  He repeatedly expounds that there was no medical basis or state policy which justified taking action against him based upon his "non-adherence to the Lifetime Subscription Model" but nothing about that conclusory allegation suggests that defendants' conduct stemmed from any mutual agreement.

The most pertinent allegations in the complaint assert that the Board's treatment of patient complaints about Bock changed once Sloane and Abraham "took over the medical board."  Bock also avers that Sloane and Abraham supported one another or agreed with one another at certain meetings.  Such allegations suggest only that Sloane and Abraham participated in typical

disciplinary proceedings together in their role as Board members but provide no basis to infer the existence of an agreement or conspiracy between them.

Furthermore, the allegations in the complaint do not support a plausible inference that Sloane and Abraham acted as separate entities.  A violation of Section 1 of the Sherman Act requires a conspiracy or agreement between two or more <u>separate</u> entities and thus conduct by individuals who belong to, and act for the benefit of, the same organization is insufficient to state a claim. <u>See</u> <u>Podiatrist Ass'n</u> v. <u>La Cruz Azul de P.R.,</u> <u>Inc.</u>, 332 F.3d 6, 13 (1st Cir. 2003).

Because Sloane and Abraham were both Board members, the complaint must allege that they acted as "independent, self-interested economic agents" rather than for the benefit of the entity (the Board) of which they were both members. <u>Id.</u> at 14. Bock's complaint does not, however, set forth any facts suggesting that Abraham or Sloane had self-interested economic interests separate from the unilateral, regulatory aims of the Board itself.  For the foregoing reasons, the Court concludes that the allegations in the complaint fail to state a claim that defendants violated Section 1 of the Sherman Act.

### 3. Qualified Immunity

In addition to this Court's determination that defendants are entitled to quasi-judicial immunity with respect to the

conduct at issue and that plaintiff fails to state a plausible
claim under Section 1 of the Sherman Act, the Court also finds
that defendants would be entitled to qualified immunity in any
event.

Whether defendants are entitled to qualified immunity
requires a two-prong analysis as to whether: 1) plaintiff has
alleged facts which state a violation of his statutory or
constitutional rights and 2) whether the subject right was
clearly established at the time of the alleged violation. See
Díaz-Bigio v. Santini, 652 F.3d 45, 50 (1st Cir. 2011).  The
second prong of the analysis itself consists of two parts:

> (a) whether the legal contours of the right in
> question were sufficiently clear that a reasonable
> official would have understood that what he was doing
> violated that right, and (b) whether the particular
> factual violation in question would have been clear to
> a reasonable official.

Id.

Thus, even if this Court were to find that Bock states a
plausible claim under Section 1 of the Sherman Act (which it
does not), the Court is unaware of any prior case law which
"clearly established" that a member of a medical licensing board
may be held individually liable under the antitrust laws for
participating in enforcement actions against a licensee.
Plaintiff, upon whom the burden rests to demonstrate the
inapplicability of defendants' qualified immunity defense, cites

no authority in his favor other than N. Carolina Dental, 574 U.S. 494.  As this Court has already noted, the Supreme Court's decision in N. Carolina Dental did not address the specific liability or immunity of "agency officials, including board members".  Id. at 513.

**ORDER**

For the foregoing reasons, defendants' motion to dismiss (Docket No. 26) is **ALLOWED**.

**So ordered.**

 /s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated:  June 1, 2023